**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *DuBose v. McGuffey*, **Slip Opinion No. 2022-Ohio-8.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-8

DUBOSE, APPELLEE, *v*. MCGUFFEY, SHERIFF, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *DuBose v. McGuffey*, Slip Opinion No. 2022-Ohio-8.]**

*Habeas corpus action claiming excessive bail—The sole purpose of bail is to ensure an accused person's attendance in court—Under Crim.R. 46, public safety is not a consideration with respect to the* financial *conditions of bail—Court of appeals' judgment granting writ and ordering reduction of bail affirmed.*

(No. 2021-1403—Submitted December 15, 2021—Decided January 4, 2022.)

APPEAL from the Court of Appeals for Hamilton County, No. C-210489, 2021-Ohio-3815.

_____

**Per Curiam.**

{¶ 1} On October 27, 2021, the First District Court of Appeals granted a writ of habeas corpus ordering the reduction of petitioner-appellee Justin DuBose's bail from $1,500,000 to $500,000. Respondent-appellant, Charmaine McGuffey,

Hamilton County sheriff (hereafter, "the state"), has appealed from that judgment. For the reasons set forth herein, we affirm the judgment of the court of appeals.

## I. Background

{¶ 2} On July 18, 2020, Shawn Green was killed in an alleged robbery in Hamilton County. DuBose and a codefendant, Jamie Shelton, were charged with the crime. DuBose was indicted on two counts of murder, one count of aggravated robbery, and one count of aggravated burglary in case No. B 2005815-B. He was arrested in Las Vegas, Nevada, and returned to Ohio after waiving extradition.

{¶ 3} On November 5, 2020, a bail hearing took place in the Hamilton County Municipal Court. DuBose's attorney requested a "reasonable" bail, based on DuBose's limited financial means, ties to the community, and lack of a significant criminal record. The state asked for a bail amount of $1,500,000, to match the bail amount that a different judge had set for DuBose's codefendant. In support of the bail amount, the state asked the judge to consider the circumstances of the crime (Green was shot in the head after intruders—allegedly DuBose and Shelton—entered a home to rob its owner of marijuana) as well as the fact that DuBose allegedly fled to Nevada after the crime. The court set a bail of $750,000 on the murder charge and a separate $750,000 bail on the aggravated-robbery charge.

{¶ 4} On January 26, 2021, DuBose filed a motion for a bail reduction in the Hamilton County Court of Common Pleas. A hearing on the motion was held on February 23, 2021. DuBose emphasized his limited resources, as well as his ties to the community and lack of a felony record, while the state again focused on the circumstances of the crime and DuBose's alleged flight risk. At the close of the hearing, the trial court stated:

> [T]he Court cannot ignore the serious nature of this offense and alleged conduct that I just heard about fleeing the state.

So given all of that, I do think that $1.5 million is an excessive bond, but I am going to reduce it.

The court then reduced the bail to $500,000.

{¶ 5} The next day, however, the trial court restored the original bail amount because the court had failed to notify the victim's family of the bail hearing, as required by Marsy's Law, Article I, Section 10a, Ohio Constitution. On February 26, the parties again appeared before the trial court for a hearing on DuBose's motion for a bail reduction. The state presented new evidence—a photograph posted on Facebook showing DuBose with multiple firearms. The victim's grandmother was present for the second hearing. She told the trial court, "I would like you to keep his bond where it was. We don't feel safe with him out on bond." She also reported that her daughter, the victim's mother, would be "scared to death if he gets out." The trial court concluded, "This additional information that I've received today changes the consideration that I had the other day." The court therefore overruled the motion to reduce the bail amount.

{¶ 6} On June 28, DuBose filed a second motion to reduce bail. On August 12, at the hearing on the motion, DuBose presented evidence that he had traveled commercially to Las Vegas, stayed in hotels under his own name, and posted updates about his whereabouts on Instagram, all to refute the suggestion that his trip to Las Vegas constituted flight. The state, on the other hand, offered a report from the Las Vegas police regarding DuBose's arrest. According to the state, the report indicates that when the police in Las Vegas initially approached DuBose (on an unrelated matter), he provided a counterfeit California identification card for "Kevin Polanski" and claimed to be Polanski.

{¶ 7} The trial court denied the second motion to reduce bail. It based its decision on three factors. First, the trial court noted that DuBose is facing serious criminal charges that will carry "significant mandatory prison time" if he is

convicted. Second, the trial court "placed a lot of weight on" the statements of the victim's family member and "more importantly, the sentiment and the fear that the family member had." And third, the trial court observed that there is "no reasonable reason to use a fake identity," which DuBose had allegedly done in Las Vegas. In its decision, the trial court gave no weight to the state's allegation that DuBose had *fled* to Las Vegas. And the court discounted the state's argument that the possibility of future charges against DuBose in Las Vegas might make him unavailable for trial in this case.

{¶ 8} On September 22, DuBose filed a petition for a writ of habeas corpus in the First District. After the state filed a response to the petition, the court of appeals granted the writ. The court of appeals held that bail in the amount of $1,500,000 was excessive because it did not take into consideration DuBose's financial resources, as required by Crim.R. 46(C)(4). 2021-Ohio-3815 at ¶ 27. As the court of appeals noted, the state did not dispute DuBose's claim that he and his family were unable to afford the $1,500,000 bail. *Id.* at ¶ 19. In the view of the court of appeals, "DuBose's high bail was effectively a denial of bail, without the trial judge making any of the required statutory findings" to hold a defendant without bail. *Id*. at ¶ 26. The court therefore granted DuBose's petition and reduced his bail to $500,000, no 10 percent bond, but added several nonfinancial conditions, including that DuBose would be subject to 24-hour lockdown enforced by electronic monitoring, he could have no direct or indirect contact with the victim's family, and he had to surrender his passport. *Id.* at ¶ 29.

{¶ 9} The state appealed.

## II. Analysis

### A. *Legal background*

{¶ 10} "Bail is security for the appearance of an accused to appear and answer to a specific criminal * * * charge * * *." R.C. 2937.22(A). All persons are "bailable by sufficient sureties, except for a person who is charged with a capital

4

offense where the proof is evident or the presumption great, and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community." Ohio Constitution, Article I, Section 9. Pretrial release not only makes it easier for an accused person to prepare a defense, it also upholds the presumption of innocence by ensuring that a person is not punished before being convicted. *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

{¶ 11} The sole purpose of bail is to ensure a person's attendance in court. *State ex rel. Sylvester v. Neal*, 140 Ohio St.3d 47, 2014-Ohio-2926, 14 N.E.3d 1024, ¶ 16. "Bail ensures appearance. Therefore, the conditions placed on it must relate to appearance and the reasons for forfeiture to nonappearance." *State ex rel. Baker v. Troutman*, 50 Ohio St.3d 270, 272, 553 N.E.2d 1053 (1990).

{¶ 12} Both the United States Constitution and the Ohio Constitution prohibit excessive bail. Eighth Amendment to the U.S. Constitution and Article I, Section 9 of the Ohio Constitution. A bail amount that is "higher than an amount reasonably calculated to" ensure the accused's presence in court is "excessive." *Stack* at 5. Habeas corpus is the proper vehicle by which to raise a claim of excessive bail in pretrial-release cases. *Chari v. Vore*, 91 Ohio St.3d 323, 325, 744 N.E.2d 763 (2001). The burden of proof in an excessive-bail habeas petition is on the petitioner. *Id*. at 326.

{¶ 13} In this appeal, the state presents two propositions of law. Under its first proposition, the state contends that the court of appeals erred when it reviewed the trial court's bail decision de novo, rather than for an abuse of discretion. And under its second proposition of law, the state asserts that the court of appeals erred by discounting the statement by the victim's grandmother regarding her and her daughter's concern for their personal safety. The state's assertions do not have merit.

*B. The state's first proposition of law*

{¶ 14} Under its first proposition of law, the state argues that the court of appeals should have reviewed the trial court's bail determination for an abuse of discretion. The state asserts that de novo review of a trial court's bail determination is inconsistent with Article I, Section 9 of the Ohio Constitution and Crim.R. 46(B), both of which vest the trial court with discretion over bail determinations.

{¶ 15} In the exercise of its discretion under Crim.R. 46, a trial court may not impose bail that violates the constitutional prohibition against bail in an amount higher than an amount reasonably calculated to ensure the accused's presence in court. *Stack*, 342 U.S. at 5, 72 S.Ct. 1, 96 L.Ed. 3. Whether a particular bail determination is unconstitutionally excessive is a question of law appropriate for de novo review.

{¶ 16} Moreover, we recently recognized that in an original habeas action, a court of appeals may receive new evidence *and* independently weigh the evidence to make its own bail determination. *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 5. This is not to say that every case warrants review. As with any action for habeas relief, the burden is on the petitioner to establish his right to release, *Chari*, 91 Ohio St.3d at 325, 744 N.E.2d 763, and the petitioner must demonstrate "with particularity the extraordinary circumstances entitling him to habeas corpus relief," *State ex rel. Wilcox v. Seidner*, 76 Ohio St.3d 412, 414, 667 N.E.2d 1220 (1996).

{¶ 17} Here, the court of appeals noted that neither party requested an opportunity to submit additional evidence. It also noted that the state did not contest DuBose's assertion that neither he nor his family could afford bail in the amount of $1,500,000 and that the state did not introduce evidence to rebut that assertion. Thus, unlike this court in *Mohamed*, the court of appeals did not receive new evidence in this case. Instead, on the record before it, the court of appeals concluded that the bail amount was excessive because it did not take into

consideration DuBose's financial resources as required by Crim.R. 46(C)(4). De novo review was the proper standard of review for this question of law.

{¶ 18} The court of appeals did not disturb the trial court's findings of fact (nor do we). Rather, the court of appeals concluded that the bail imposed by the trial court was excessive based on its review of those facts in the context of the protections provided by the United States and Ohio Constitutions and the statutory provisions and criminal rules that govern bail. We reject the state's first proposition of law.

### C. The state's second proposition of law

{¶ 19} Under its second proposition of law, the state argues that the court of appeals wrongly disregarded the grandmother's statement that she and her daughter would fear for their safety if DuBose were released on bail. The state contends that although there is a statutory process for holding without bail a criminal defendant who poses a threat to public safety, the fact that the trial court considered the threat that DuBose allegedly poses does not automatically mean the court was operating under that statute and had to meet its requirements. In other words, the state argues that the potential threat posed by a defendant is a legitimate consideration when fixing the appropriate amount of bail.

{¶ 20} A judge may impose bail or hold a criminal defendant without bail. The process of assessing bail is governed by Crim.R. 46. When determining the amount and conditions of bail, a court must consider "all relevant information," including (1) the nature and circumstances of the crime charged and whether the crime involved a weapon, (2) the weight of the evidence against the defendant, (3) the confirmation of the defendant's identity, (4) the defendant's family ties, employment, financial resources, character, record of convictions, and (5) whether the defendant was on parole or subject to another form of court control at the time of the alleged offense. Crim.R. 46(C); *Mohamed*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 7.

{¶ 21} Alternatively, if the state believes that a person poses a danger to the community and must be held without the possibility of release, then the state must follow the procedures set forth in R.C. 2937.222 for an order of detention without bail. In order to hold a person without bail under that statute, the judge must find by clear and convincing evidence that "the proof is evident or the presumption great that the accused committed the [serious offense] with which the accused is charged, * * * that the accused poses a substantial risk of serious physical harm to any person or to the community, and * * * that no release conditions will reasonably assure the safety of that person and the community." R.C. 2937.222(B). In the present case, the court of appeals concluded that the state is trying to hold DuBose without bail without attempting to meet its burden of proof under the statute, which the court deemed "improper" because " 'setting a high bail in order to keep someone accused of a crime incarcerated pretrial is both statutorily and constitutionally unlawful.' " 2021-Ohio-3815 at ¶ 18, 26, quoting *Mohamed* at ¶ 24 (Stewart, J., concurring).

{¶ 22} The state contends that the court of appeals erred by reducing the bail amount on this basis. The state avers that the court of appeals "took the State's arguments relative to the safety concerns of the victim's family and looked at them in terms of R.C. 2937.222, but Crim.R. 46 also mandates consideration of the protection or safety of any person or the community at large." By doing so, the state contends, the court of appeals dismissed those safety concerns from the calculus and thereby "elevated [DuBose's] ability to pay a certain amount for bail above all other considerations that are provided under Crim.R. 46."

{¶ 23} As previously noted, Crim.R. 46(C) contains a nonexclusive list of factors a court must consider when determining the amount of bail. Crim.R. 46(B)(2)(i) authorizes courts to impose "[a]ny other constitutional condition considered reasonably necessary to ensure appearance or public safety" as a condition of bail. But Crim.R. 46 was amended effective July 1, 2020. In its current form, Crim.R. 46(B) provides that

> the court shall release the defendant on the least restrictive conditions that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process. If the court orders *financial* conditions of release, those financial conditions shall be related to the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant.

(Emphasis added.) Thus, the rule distinguishes between the *financial* conditions of release and other conditions of release and requires the financial conditions to relate to the risk of nonappearance.

{¶ 24} As the revised rule makes clear, public safety is not a consideration with respect to the *financial* conditions of bail. In making this statement, we do not minimize the importance of the safety concerns of the victim's family in this case. We merely recognize, as did the court of appeals, that under Crim.R. 46(B)(2), public-safety concerns may be addressed by imposing nonfinancial conditions, such as restrictions on travel and association, completion of alcohol- and drug-abuse treatment, and orders of no contact with witnesses in the case. 2021-Ohio-3815 at ¶ 25, fn. 2. And restrictions like these were placed on DuBose by the court of appeals. In addition to the nonfinancial conditions of release already imposed by the court of common pleas, the court of appeals ordered 24-hour lockdown enforced by electronic monitoring, no contact with the victim's family, and the surrender of his passport.

{¶ 25} For the above reasons, we do not find that the court of appeals wrongly disregarded the grandmother's statement in its determination whether the

9

financial condition of bail set by the trial court was excessive. Thus, the state's second proposition of law has no merit.

*D. Was $1,500,000 an excessive bail amount?*

{¶ 26} The court of appeals reviewed de novo the bail decision in DuBose's case and concluded, on the record before it, that bail in the amount of $1,500,000 was unconstitutionally excessive. In an extraordinary-writ case, we review the judgment of a court of appeals as if the case had been originally filed in this court. *See State ex rel. Armatas v. Plain Twp. Board of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, 170 N.E.3d 19, ¶ 12 (mandamus). We therefore proceed to a de novo assessment of whether the bail amount set by the trial court was excessive.

{¶ 27} As amended, Crim.R. 46(B) specifies that the financial conditions of release must be related to "the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant." At the same time, the rule continues to provide:

> [I]n determining the types, *amounts*, and conditions of bail, the court shall consider all relevant information, including but not limited to:
>
> > (1) The nature and circumstances of the crime charged, and specifically whether the defendant used or had access to a weapon;
> >
> > (2) The weight of the evidence against the defendant;
> >
> > (3) The confirmation of the defendant's identity;
> >
> > (4) The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;
> >
> > (5) Whether the defendant is on probation, a community control sanction, parole, post-release control, bail, or under a court protection order.

(Emphasis added.) Crim.R. 46(C). As to many of the factors in this list, the evidence either weighs in DuBose's favor or the record contains no relevant evidence either way.

{¶ 28} For example, although DuBose has prior misdemeanor convictions, he has no felony record, was not on any form of supervised release at the time of the crime, and apparently has no prior record of nonappearance in court. The state made no representation as to the strength of the evidence against DuBose, nor did the state indicate which defendant allegedly fired the fatal shot. On the other hand, the evidence was undisputed that DuBose has ties to the community and few or no financial resources.

{¶ 29} The trial court cited three factors in support of the higher bail amount: (1) the serious nature of the crime, (2) the safety concerns expressed by the family, and (3) DuBose's alleged use of a fake ID. The serious nature of the crime, standing alone, did not persuade the trial court to impose the higher bail amount; the judge initially agreed that a $1,500,000 bail for DuBose was excessive because the serious nature of the charges did not outweigh DuBose's lack of financial resources. That conclusion is consistent with our decision in *Mohamed*, in which we reduced the bail amount for a defendant who was facing multiple charges of attempted murder and felonious assault from $1,000,000 to $200,000, based largely on his inability to afford the higher bail amount. *Mohamed*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, at ¶ 6-7. And the reduced amount of $500,000 in this case is consistent with the bail imposed in other cases alleging comparable crimes. *See, e.g.*, *Johns v. Wasylyshyn*, 6th Dist. Wood No. WD-16-002, 2016-Ohio-564, ¶ 2, 8 ($500,000 bail for a defendant indicted on one count of murder of a child, two counts of endangering children, and one count of involuntary manslaughter).

**{¶ 30}** By contrast, in cases in which bail has exceeded $1,000,000, courts have affirmatively found the existence of factors that do not apply to DuBose, such as strong evidence of guilt and the ability to pay. For example, in *Ahmad v. Plummer*, this court held that a bail set at $3,000,000 on a charge of conspiracy to commit murder was not excessive, because the defendant had assets to afford the bail amount and there was "substantial evidence against him." 126 Ohio St.3d 262, 2010-Ohio-3757, 933 N.E.2d 256, ¶ 15-17. More recently, the Sixth District Court of Appeals affirmed a cumulative $1,400,000 pretrial bail, for a defendant charged with 9 counts of rape, 12 counts of gross sexual imposition, 6 counts of sexual battery, and 5 counts of pandering obscenity to a minor. *Stevens v. Navarre*, 2021-Ohio-551, 168 N.E.3d 578, ¶ 11, 19 (6th Dist.). In that case, the court of appeals found it "meaningful" that the victims were minors, and it also noted that there was substantial evidence against the accused, including testimony from the victims and DNA evidence. *Id*. at ¶ 18; *see also Drew v. State ex rel. Neil*, 2020-Ohio-4366, 158 N.E.3d 684, ¶ 1, 6, 10 (1st Dist.) (no abuse of discretion in setting $5,000,000 bail for a defendant charged with nine counts of rape when the defendant failed to submit trial-court-hearing transcripts or other evidence in his habeas action).

**{¶ 31}** Only after the February 26 hearing, based on the "additional information" that the judge had received that day, did the trial court rule in favor of a higher bail amount. The "additional information" to which the trial court referred was the statement by the victim's grandmother that she and her daughter feared DuBose, a factor upon which the judge "placed a lot of weight."[1] As explained above, public safety, although of the utmost importance, is not a factor relevant to the calculation of the bail amount, which is concerned only with ensuring the defendant's future appearance in court. While the grandmother's statement was

---

1. There was one other new piece of evidence presented at that hearing: a photograph of DuBose with firearms. However, the state's brief does not argue that the photograph justifies the higher bail amount.

certainly relevant to the trial court's decision whether DuBose was bailable, once the trial court determined that bail was appropriate, the financial condition of DuBose's bail would operate to alleviate the grandmother's fear only if it were an amount sufficient to preclude DuBose's release. Yet a court may not impose excessive bail for the purpose of keeping an accused in jail. "Keeping an accused in jail by excessive bail is as much a denial of his constitutional rights as refusing to fix bail." *State v. Bevacqua*, 147 Ohio St. 20, 22, 67 N.E.2d 786 (1946). Nonfinancial conditions may be imposed to ensure that a defendant who is released on bail will pose no threat, and if the state is concerned that those conditions will be inadequate, a mechanism exists—R.C. 2937.222—to hold the defendant without bail. Moreover, we note that the trial court did not determine that DuBose *actually* posed a threat to the victim's grandmother or her daughter. There was no suggestion, for example, that DuBose had made threats against them or that they will be witnesses against DuBose at trial. Instead, the trial court credited the unsworn statement without making any inquiry into the basis for her fear of DuBose.

{¶ 32} The third fact the trial court cited in support of its bail determination entered the record at the final bail hearing, when the state proffered an unsworn statement that DuBose was using a fake ID when he was questioned by police in Las Vegas on an unrelated matter. The trial court had already discounted the state's claim that DuBose had been fleeing prosecution, and DuBose had presented evidence that he had repeatedly posted his whereabouts on social media as he traveled. When it took those facts, along with the seriousness of DuBose's alleged offenses, into consideration after the prior bail hearing, the trial court had held that bail in the amount of $1,500,000 was excessive. We fail to see why the additional statement that DuBose used a fake ID when Las Vegas police questioned him on an unrelated matter should dramatically change the calculation of bail necessary to ensure DuBose's presence at trial. And in any case, concerns that DuBose may be

a flight risk can be addressed by other means, such as a daily reporting requirement to a probation officer and electronic monitoring.

{¶ 33} For these reasons, we conclude that the trial court's asserted reasons for setting a higher bail amount did not provide an adequate legal basis for the bail amount. Neither the grandmother's testimony about her family's safety concerns nor the unsworn statement that DuBose used a fake ID in Las Vegas is relevant to the bail amount necessary to ensure DuBose's presence at trial. As a result, we hold that the financial condition of bail set by the trial court was unconstitutionally excessive because it was more than the amount reasonably necessary to ensure DuBose's appearance in court. We therefore agree with the court of appeals that the trial court unlawfully set the bail amount so high so as to ensure that DuBose could not get out.

{¶ 34} Because we agree with the court of appeals that the trial court's financial condition of bail was excessive and the record supports the court of appeals' bail-reduction decision, we affirm the judgment of the court of appeals reducing DuBose's bail.

### III. Conclusion

{¶ 35} For these reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and STEWART and BRUNNER, JJ., concur.

DONNELLY, J., concurs, with an opinion.

KENNEDY, J., dissents, with an opinion.

FISCHER, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion.

_____

**DONNELLY, J., concurring.**

{¶ 36} The dissenting opinions appear to be missing the point in this case. The issue regarding the bail set for petitioner-appellee, Justin DuBose, is not

whether one specific dollar amount or another specific dollar amount is correct. The issue is that the amount set by the trial court was clearly calculated to be at a level that DuBose cannot possibly afford to pay. If the evidence showed that DuBose had lots of money and could afford bail in the amount of $1.5 million, would the victim's grandmother feel any safer that DuBose was released after posting that amount? No. The feeling of safety comes from ensuring that DuBose cannot leave jail.

{¶ 37} The dissenting opinions also seem to be creating a false dichotomy that a defendant either deserves to be subject to a bail that he cannot possibly afford or deserves to be out of jail until he is tried. This also misses the mark. There are certainly defendants who should be held in state custody until they are tried. The trial court has the power to order that such defendants be held without bail, but as clearly explained in the majority opinion, the way to do that is to follow the procedure in R.C. 2937.222, not to set a bail amount so high that the defendant cannot afford it.

{¶ 38} Having spent 14 years as a trial-court judge and having set thousands of bonds, I am appalled by the brazen accusations made in some of the dissenting opinions that the justices joining the majority opinion are making Ohio less safe and disrespecting victims simply by telling our courts that they must follow the rules if they want to hold defendants in custody prior to trial without the possibility of release before the trial. If a defendant does not appear to be bailable, a trial court may not prevent the defendant's pretrial release by misapplying Crim.R. 46(B) and (C), which apply to defendants who *are* bailable. The trial court must instead follow the procedures to deny bail under R.C. 2937.222. *See* Crim.R. 46(A) ("A defendant may be detained pretrial, pursuant to a motion by the prosecutor or the court's own motion, in accordance with the standards and procedures set forth in the Revised Code"). The fact that a defendant might have committed a terrible crime does not allow us to ignore the law.

_____

**KENNEDY, J., dissenting.**

{¶ 39} This case presents the question whether appellee, Justin DuBose, has satisfied his burden to demonstrate that he is being unlawfully confined based on excessive bail imposed by the trial court in his criminal case.

{¶ 40} Our review in this case is hybrid. This is an appeal from an original action for a writ of habeas corpus, and the court reviews de novo the evidence presented in the lower courts and any new evidence submitted to this court. The trial court's discretion to set the amount of bail is authorized by Article I, Section 9 of the Ohio Constitution and Crim.R. 46. An accused is not unlawfully confined and therefore not entitled to habeas relief unless the trial court abused its discretion when setting the amount of bail. DuBose had the burden of presenting evidence and proving that the trial court's decision to set his bail at $1,500,000 was unreasonable, arbitrary, or unconscionable or that it otherwise exhibited perversity of will, passion, prejudice, partiality, or moral delinquency. DuBose did not prove that the amount of bail set by the trial court resulted from an abuse of discretion. Because the evidence before us indicates that DuBose absconded from justice after allegedly committing murder with a firearm and that he poses a threat to the victim's family and the community, the order setting bail at $1,500,000 is valid, he is lawfully confined, and he is not entitled to a writ of habeas corpus ordering a reduction of the bail amount. I therefore dissent and would reverse the judgment of the First District Court of Appeals granting a writ of habeas.

**The Right to Bail**

{¶ 41} The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required." Bail is excessive when it is higher than is reasonably calculated to serve the government's interest in ensuring the accused's appearance at trial. *See United States v. Salerno*, 481 U.S. 739, 752-755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3

(1951). "[T]he fixing of bail 'is peculiarly a matter of discretion with the trial court.' " *United States v. Mitchell*, 733 F.2d 327, 331 (4th Cir.1984), quoting *United States v. Wright*, 483 F.2d 1068, 1069 (4th Cir.1973); *see also Carlson v. Landon*, 342 U.S. 524, 544-546, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (attorney general did not abuse his discretion in setting bail).

{¶ 42} Similarly, the Ohio Constitution provides a right to bail. Article I, Section 9 states:

> All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.
>
> The general assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community. Procedures for establishing the amount and conditions of bail shall be established pursuant to Article IV, Section 5(B) of the Constitution of the state of Ohio.

{¶ 43} The General Assembly enacted R.C. 2937.222, which establishes the considerations that a trial court must undertake when determining whether to deny bail to an accused. Because the trial court has already determined that DuBose is bailable, those considerations are not at issue here.

### The Amount of Bail Is Within a Trial Court's Discretion

{¶ 44} In accordance with Article I, Section 9 of the Ohio Constitution, this court promulgated Crim.R. 46 to establish the procedures for setting the amount and conditions of bail. Crim.R. 46(B) provides that if a trial court determines that denying bail is not required by statute,

> the court shall release the defendant on the least restrictive conditions that, *in the discretion of the court*, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process. If the court orders financial conditions of release, those financial conditions shall be related to the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant. Any financial conditions shall be in an amount and type which are least costly to the defendant while also sufficient to reasonably assure the defendant's future appearance in court.

(Emphasis added.) *Compare* R.C. 2937.23(A)(3) ("In all cases, the bail shall be fixed with consideration of the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of the defendant appearing at the trial of the case").

{¶ 45} Crim.R. 46(B) expressly commits the amount of bail required to the discretion of a trial court. Therefore, the standard for reviewing a trial court's

determination of the amount of bail is the abuse-of-discretion standard. *Jenkins v. Billy*, 43 Ohio St.3d 84, 85, 538 N.E.2d 1045 (1989); *Bland v. Holden*, 21 Ohio St.2d 238, 239, 257 N.E.2d 397 (1970) ("The amount of bail is largely within the sound discretion of the court").

**{¶ 46}** This accords with the decisions of other courts of last resort that the amount of bail is a discretionary determination. *See, e.g.*, *State v. Visintin*, 143 Haw. 143, 162, 426 P.3d 367 (2018); *State v. Pratt*, 204 Vt. 282, 2017 VT 9, 166 A.3d 600, ¶ 20; *State v. Brown*, 2014-NMSC-038, 338 P.3d 1276, ¶ 39; *Myers v. St. Lawrence*, 289 Ga. 240, 241-242, 710 S.E.2d 557 (2011); *Querubin v. Commonwealth*, 440 Mass. 108, 120, 795 N.E.2d 534 (2003), fn. 10. It is also consistent with our own recognition that when excessive-bail cases are "considered as appeals, it is reasonable to require some finding of error or abuse of discretion before allowing the writ to issue overturning or modifying the decision of the trial court." *In re DeFronzo*, 49 Ohio St.2d 271, 273, 361 N.E.2d 448 (1977).

### Review of Bail Decisions

**{¶ 47}** Ohio law does not permit an interlocutory appeal of a trial court's order setting bail, and we have recognized that a petition for a writ of habeas corpus is the proper vehicle to raise an excessive-bail claim. *Chari v. Vore*, 91 Ohio St.3d 323, 325, 744 N.E.2d 763 (2001); *State v. Bevacqua*, 147 Ohio St. 20, 67 N.E.2d 786 (1946), syllabus. We have suggested that there is a hybrid nature to these types of claims, pointing to "the 'anomaly in original actions which are filed seeking habeas corpus on the grounds of excessive bail because the effect of such cases is an appeal from a decision of the trial court; yet, such cases are also considered as original actions so as to permit hearings and findings of fact.' " *Ahmad v. Plummer*, 126 Ohio St.3d 262, 2010-Ohio-3757, 933 N.E.2d 256, ¶ 2, quoting *DeFronzo* at 273. Relying on *Ahmad* and *DeFronzo*, this court recently held that a trial court's determination of the amount of bail is subject to de novo review by this court and suggested that this court is vested with the discretion to substitute its judgment for

that of the trial court and determine the amount of bail. *See Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 4-5.

{¶ 48} In my view, that analysis is incorrect. This is an appeal from an original action, and we review de novo the evidence presented in the trial court and any new evidence submitted to the court of appeals or to this court. *Ahmad* at ¶ 2. But the focus remains on whether the petitioner is entitled to a writ of habeas corpus, and " '[h]abeas corpus in Ohio is generally appropriate in the criminal context only if the petitioner is entitled to immediate release from prison or some other type of physical confinement.' " *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 13, quoting *State ex rel. Smirnoff v. Greene*, 84 Ohio St.3d 165, 167, 702 N.E.2d 423 (1998).

{¶ 49} DuBose therefore bore the burdens of presenting evidence and persuading this court that he is unlawfully confined. *Chari* at 326. As explained above, the trial court is vested with discretion to set the amount and conditions of bail pursuant to Article I, Section 9 of the Ohio Constitution and Crim.R. 46, as well as our caselaw. It therefore follows that DuBose is not entitled to a writ of habeas corpus unless he proves that the trial court abused its discretion in setting the amount and conditions of bail—if the trial court did not exceed its discretion, then DuBose is not being unlawfully confined. In determining whether the trial court abused its discretion, we independently consider and weigh the evidence submitted by the parties.

{¶ 50} Because the ultimate standard of review in determining whether DuBose is unlawfully confined on excessive bail is an abuse of discretion, this court is not permitted to substitute its judgment for that of the trial court. *Mohamed*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 39 (Kennedy, J., dissenting); *see also In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991) ("When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court"). "Nor is it the function of

a habeas proceeding to provide the petitioner a second bail hearing." *Mohamed* at ¶ 39 (Kennedy, J., dissenting). Rather, the habeas remedy is available to protect the accused's constitutional rights from the trial court's abuse of its discretion in setting an excessive bail. *See generally Bevacqua*, 147 Ohio St. at 22-23, 67 N.E.2d 786.

## Review for an Abuse of Discretion

{¶ 51} An " ' "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Ellipsis added in *White*.) *State v. White,* 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 46, quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). It also exists when there is "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶ 52} Crim.R. 46(B) directs the trial court to impose the least-restrictive conditions of release that "will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process." Financial conditions must also be "related to the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant." *Id*. The trial court must also consider (1) the nature and circumstances of the crime charged and whether the crime involved a weapon, (2) the weight of the evidence against the defendant, (3) the confirmation of the defendant's identity, (4) the defendant's family ties, employment, financial resources, character, and record of convictions, and (5) whether the defendant was on parole or subject to another form of court control at the time of the alleged offense. Crim.R. 46(C).

{¶ 53} Reviewing the evidence in this case de novo, I believe the trial court's order setting bail at $1,500,000 was not an abuse of discretion. DuBose is alleged to have committed murder during a robbery in which the victim was shot in the head. He then left the state and flew to Las Vegas. When approached by

law-enforcement officers in Las Vegas, he presented counterfeit identification and was found to have $2,000 in cash. Following DuBose's extradition from Las Vegas, the trial court initially set bail at $1,500,000. On DuBose's motion and after hearing about his connections to the community and his inability to pay the bail previously set, the trial court reduced bail to $500,000. However, because the victim's family had not been notified of the change-of-bail hearing as required by Marsy's Law, Article 1, Section 10a of the Ohio Constitution, the trial court reinstated the $1,500,000 bail. At a subsequent hearing on DuBose's motion for reduced bail, the victim's grandmother stated that her family would not feel safe if DuBose were released and that the victim's mother was scared of him. There was also evidence of a social-media post in which DuBose posed with multiple firearms, which, along with the circumstances of the crime, tends to prove that he possessed a firearm at the time of the murder and robbery. DuBose, in turn, pointed to his limited financial resources, his ties to the community, and his lack of a felony record. The trial court ultimately maintained DuBose's bail at $1,500,000.

{¶ 54} Considering this evidence, without giving deference to the trial court's findings, it was not unreasonable to set bail at $1,500,000. DuBose faces serious charges with mandatory prison time, the evidence suggests that he possessed a firearm at the time he allegedly committed the charged offenses, and he absconded from justice (as shown by his leaving the state soon after the crime, his use of counterfeit identification, and his possession of a large amount of cash). Based on this evidence, a court could reasonably conclude that there is a strong risk that DuBose might not appear at trial. Further, the victim's grandmother's statement to the court indicates that the amount of bail was reasonably necessary for the protection or safety of the victim's family, a factor that Crim.R. 46(B) makes relevant to both the financial and nonfinancial conditions of release. DuBose presented conflicting information regarding his financial condition, at one point representing that he was unemployed and later, when arguing that he had strong

ties to the community, claiming that he had been employed by the same employer for a year. That evidence cuts against his credibility as well as his inability to post bail.

{¶ 55} Courts have rejected the view that bail is excessive merely because the accused cannot afford it. 4 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, Orin S. Kerr, *Criminal Procedure*, Section 12.2(b) (4th Ed.Rev.2021). Further, to the extent that there is no evidence related to other factors, that counts against DuBose, since he bears the burden of presentment and persuasion. In light of the factors to be considered under Crim.R. 46 and weighing all the evidence together—the seriousness of the charged offenses, which were committed with a firearm, the risk of flight, and the need to protect the victim's family—the trial court could reasonably conclude that bail in the amount of $1,500,000 was necessary.

{¶ 56} The majority's analysis has it backwards. It applies a de novo review to the ultimate decision regarding the amount of bail, but it relies on the trial court's findings—or lack of findings—regarding the evidence presented. It suggests that the trial court put too much weight on the victim's family's safety and failed to make a finding that DuBose poses an actual threat. It notes that the trial court gave DuBose the benefit of the doubt regarding whether he had fled the state, even though the trial court also noted that DuBose could not justify using counterfeit identification. And the majority relies on the fact that the trial court initially determined that the charges of murder and robbery required bail in the amount of only $500,000, while disregarding its finding that bail in the amount of $1,500,000 was necessary.

{¶ 57} This is not de novo review. A de novo review requires the reviewing court to independently consider and weigh the evidence and to determine whether the party who bears the burden of proof—here, DuBose—has demonstrated entitlement to relief. Instead, the majority basically picks and chooses among the trial court's findings, deferring to some and rejecting others, before coming to its

own conclusion that the trial court's findings that it accepts warrant a reduction of the bail amount.

{¶ 58} In my view, DuBose failed to establish that the trial court abused its discretion in setting the amount of bail. The trial court's consideration of the relevant factors on the record shows that its decision was not unreasonable, arbitrary, or unconscionable or that it otherwise exhibited perversity of will, passion, prejudice, partiality, or moral delinquency. Absent a showing that the trial court abused its discretion in setting bail, DuBose's confinement is not unlawful and a writ of habeas corpus will not lie. For these reasons, I dissent and would reverse the judgment of the court of appeals.

———————————

**FISCHER, J., dissenting.**

{¶ 59} Abuse of discretion is the appropriate standard of review in a habeas corpus petition alleging excessive bail when an appellate court merely reviews the same evidence presented to the trial court during the bail hearings. Because the majority opinion holds otherwise, I must respectfully dissent.

**Abuse of Discretion Is the Appropriate Standard of Review in this Case**

{¶ 60} The majority opinion holds that the First District Court of Appeals properly reviewed de novo the issue of excessive bail in Justin DuBose's habeas petition. The majority opinion maintains that whether the trial court complied with Crim.R. 46—i.e., whether it considered the proper factors—is solely a question of law. Majority opinion at ¶ 17. The majority opinion also relies on this court's recent decision in *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 5, to support its assertion that an appellate court may perform an independent review in this situation.

{¶ 61} While *Mohamed* recognizes that there are circumstances in which an appellate court may have some independent review, it does not suggest that appellate courts have unrestrained de novo review for all bail issues. Rather,

*Mohamed* indicates that a de novo review is appropriate when the appellate court has accepted new evidence from the petitioner, outside of what was presented to the trial court. *See Mohamed* at ¶ 4-5. To interpret *Mohamed* so broadly is to invalidate well-established precedent on the issue.

{¶ 62} It is true that this court's case law has made it difficult to determine the appropriate standard of review in habeas cases asserting excessive bail. *See DuBose v. McGuffey,* 165 Ohio St.3d 1459, 2021-Ohio-4147, 176 N.E.3d 770, ¶ 5 (DeWine, J., dissenting). But after reading the line of cases on this issue, I find it apparent that the proper standard of review is generally an abuse of discretion, unless the petitioner has demonstrated that independent review is warranted. *See Jenkins v. Billy,* 43 Ohio St.3d 84, 85, 538 N.E.2d 1045 (1989) (court noted that the petitioner alleged no facts to demonstrate that the trial court abused its discretion or that appropriate grounds for independent review by the Ohio Supreme Court existed); *State v. Foster,* 10th Dist. Franklin No. 08AP-523, 2008-Ohio-3525, ¶ 5 (challenges alleging excessive bail are generally reviewed for an abuse of discretion in a habeas corpus action).

{¶ 63} While there are certainly circumstances in which an independent review may be appropriate, for example, when the appellate court has accepted new evidence or has held a hearing, *see In re DeFronzo*, 49 Ohio St.2d 271, 274, 361 N.E.2d 448 (1977), those situations do not exist in this case. The First District was presented with only the trial-court documents and the transcripts of the bail hearings that had been held before the trial court. There was no new evidence admitted. There was no separate hearing held. The appellate court simply read and reviewed what the parties had presented to the trial court.

{¶ 64} We all know that trial courts do not have the discretion to make errors of law. *Johnson v. Abdullah*, ___Ohio St.3d ___, 2021-Ohio-3304, ___N.E.3d____, ¶ 39. But it is evident from the trial-court and appellate-court records in this case that we are not talking about a misapplication of the law. The

entire issue is about weighing the evidence and deciding whether the bail amount imposed was excessive. The appellate court looked only at whether the trial court had appropriately considered DuBose's financial situation—that is, whether the trial court had properly weighed the evidence before it. *See* 2021-Ohio-3815, ¶ 19-20, 28. And that is an issue that is normally reviewed for an abuse of discretion, and it is an issue that is easily determined here, when the trial-court record is read in full.

{¶ 65} The trial-court record clearly demonstrates that the trial court considered DuBose's financial situation in determining the amount of bail; it simply did not give that factor much weight in comparison to the other factors that the trial court was required to consider under Crim.R. 46. DuBose filed two motions for reduction of his bail. In those motions, DuBose briefly mentioned that he and his family do not have the financial means to post his bail. The issue of finances was only briefly mentioned by DuBose's counsel at the first hearing. His counsel noted that DuBose had a job, that he lived with his mother, and that they have "limited resources."

{¶ 66} Nevertheless, the trial court considered DuBose's financial situation at each hearing. At the first bail hearing, the trial court acknowledged that it had to consider DuBose's financial situation in addition to many other factors, such as the seriousness of the offense. The court, considering all the factors, decided to reduce the bail amount. However, upon rehearing, after listening to statements from the victim's family member, the court stated, "This *additional* information that I've received today changes the *consideration* that I had the other day. And the Court being *fully advised*, I'm going to overrule the motion to reduce the bond at this time." (Emphasis added.) At the third hearing, the court again recognized that it needed to consider the defendant's financial resources when setting the bail amount. The court again considered everything it had previously, placing great

weight on the statements from the victim's family member, and it determined that the motion should be denied.

{¶ 67} After reviewing the motions filed in the trial court and the transcripts of the hearings on those motions, I find it clear that the trial court considered DuBose's financial resources and weighed that factor with the other relevant factors. The court of appeals even acknowledged the trial court's effort in weighing the factors under Crim.R. 46. 2021-Ohio-3815 at ¶ 28. But the appellate court simply disagreed with the trial court's weighing of those factors, so it conducted its own analysis. *Id.* ¶ 16-28. This was improper because the amount of bail is largely within the sound discretion of the trial court, *see Bland v. Holden*, 21 Ohio St.2d 238, 239, 257 N.E.2d 397 (1970), and the appellate court here merely reviewed the trial-court record. Therefore, abuse of discretion is the appropriate standard of review in this case. We should remand the matter to the appellate court for it to apply the proper standard of review. *See State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 29 (cause remanded to the appellate court for it to conduct the proper analysis).

### Crim.R. 46(C) Permits Consideration of the Safety Concerns of the Victim's Family

{¶ 68} Because I would hold that abuse of discretion is the appropriate standard of review and would remand the cause to the appellate court to apply that standard, I would not reach the state's second proposition of law. However, because the majority opinion decides the issue, I find it necessary to weigh in. I disagree with the majority opinion's conclusion that the trial court's consideration of the safety concerns of the victim's family when setting the bail amount was improper.

{¶ 69} I agree that Crim.R. 46(B) clearly indicates that financial conditions of release must be related to the defendant's risk of nonappearance, the seriousness of the offense, and the previous criminal record of the defendant. But that is not

the end of the analysis. Crim.R. 46(C) states specifically that "in determining the *types*, *amounts*, *and conditions of bail*, the court *shall* consider all relevant information, *including but not limited to*" a nonexhaustive list of factors. (Emphasis added). This language in Crim.R. 46(C) permits the trial court to consider other relevant information in determining the *amount* of a financial condition. This could include safety concerns expressed by the victim's family.

{¶ 70} Therefore, based on the plain language of Crim.R. 46(C), I cannot agree with the majority opinion that the safety concerns cited by the trial court deserve no consideration in determining the *amount* of the defendant's financial condition for bail.

## Conclusion

{¶ 71} Abuse of discretion is the appropriate standard of review in this case. I would reverse the judgment and remand the cause for the First District Court of Appeals to review the trial court's bail determination for an abuse of discretion in the first instance. I would not reach the state's second proposition of law. Therefore, I must respectfully dissent.

_____

**DEWINE, J., dissenting.**

{¶ 72} Make no mistake: what the majority does today will make Ohio communities less safe. Despite the fact that Crim.R. 46(B) requires a trial court to consider "the safety of any person or the community" when setting bail, the majority today says that a trial court is prohibited from even considering public safety when setting bail. Despite the fact that Ohio voters passed a constitutional amendment that guarantees victims the right to be heard in the bail process, the majority slams the door on a victim's right to be heard. And despite the fact that trial courts—who take evidence and can assess the credibility of witnesses—are in the best position to make bail decisions, the majority today invites appellate courts

28

to second-guess trial-court bail decisions based on nothing more than a paper record. I dissent.

## I. Background

{¶ 73} Justin DuBose is alleged to have shot a man in the head while committing an armed robbery, leaving the victim to die. After the crime, DuBose and his accomplice fled. The two were picked up in Las Vegas. When DuBose was apprehended, he provided a fake identification card to law enforcement and was in possession of multiple credit cards that were not in his name, as well as $2,000 in cash.

{¶ 74} Bail was initially set at $1.5 million. DuBose's counsel filed a motion to reduce bail, and following a hearing, the trial court indicated that bail would be reduced to $500,000. The next day, however, the trial court reinstated the original bail amount. It did so because it concluded that the family of the deceased had not been notified of the hearing, in violation of Marsy's Law, Ohio Constitution Article I, Section 10a. Marsy's Law guarantees victims the right to be notified of and heard at a proceeding involving the release of the accused. The Constitution defines "victim" to include one who "is directly and proximately harmed" by a criminal act. *Id.* at Section 10a(D).

{¶ 75} The trial court reconvened the hearing to allow the victims to be heard. At the hearing, the grandmother of the deceased told the court: "We don't feel safe with him out on bond" and "My daughter's scared to death if he gets out." The state also introduced a picture showing DuBose with a number of firearms. At the conclusion of the hearing, the court overruled the motion to reduce bail.

{¶ 76} DuBose filed a second motion to reduce bail. Attached to the motion, DuBose presented travel itinerary and Instragram posts, which he claimed proved that he was not fleeing when he was picked up in Las Vegas. Yet the travel itinerary concerned a flight to Orlando, Florida, not Las Vegas, Nevada. And the Instagram photos were from Orlando and Los Angeles, again not Las Vegas. The

trial court noted that there was no legitimate reason for DuBose to present law-enforcement officers with fake identification in Las Vegas, but it also said that it would give DuBose "the benefit of the doubt" that his travel to Las Vegas was not flight. Nonetheless, the trial court overruled DuBose's motion, citing the seriousness of the crime and the statement it had heard from the victim's family member.

{¶ 77} DuBose then filed a writ of habeas corpus in the First District Court of Appeals. The court of appeals determined that it would apply de novo review to the trial court's decision—in other words, that it would consider the bail motion anew without providing any deference to the trial court's decision. But despite applying de novo review, the court of appeals didn't hold a hearing. Nor is there any indication in the record that the court of appeals provided any notice to the victims or allowed the victims the right to be heard as required by Marsy's law. *See* Ohio Constitution, Article I, Section 10a(A)(2) and (3). After reviewing the paper record, the court of appeals concluded the trial court had erred and reduced DuBose's bail to $500,000.

{¶ 78} The majority conducts what it says is its own de novo assessment of DuBose's bail, and concludes that the court of appeals appropriately reduced DuBose's bail. Majority opinion, ¶ 26, 34. I disagree with the result reached by the majority, and with the analysis it uses to get there.

## II. The majority's flawed decision

{¶ 79} In my view, there are several problems with the majority's analysis. First, the majority applies the wrong standard of review. Second, in doing so, the majority fails to accord crime victims the rights they are guaranteed under Marsy's Law. And third, the majority refuses to allow trial courts to even consider public safety when setting bail. Unfortunately, these are mistakes that will have serious consequences when it comes to the safety of Ohio communities.

### A. The majority applies the wrong standard of review

{¶ 80} The majority begins its analysis by concluding that the court of appeals correctly applied de novo review to the trial court's bail decision. I disagree.

{¶ 81} Article I, Section 9 of the Ohio Constitution entrusts the trial court with the responsibility of setting bail. The applicable provision states: "Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail." *Id.* "The court" in the provision obviously refers back to the court in which the defendant has been charged with an offense, meaning it is the trial court that bears the responsibility of setting bail.

{¶ 82} Crim.R. 46(B) makes clear that the trial court has discretion as to the terms of bail. Under the rule, in determining the conditions of pretrial release, a trial court is required to impose the least restrictive conditions that "*in the discretion of the court*, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process." (Emphasis added.) *Id.* It is axiomatic that when something is entrusted to a trial court's discretion, we review that decision for an abuse of that discretion.

{¶ 83} "To tell a trial judge that he has discretion in certain matters is to tell him that there is a range of choices available to him. It is to tell him that the responsibility is his, and that he will not be reversed except for straying outside the permissible range of choice, i.e., for abuse of discretion." *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 372, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) (Frankfurter, J., dissenting). Indeed, to apply anything other than abuse-of-discretion review to the trial court's discretionary decision is almost nonsensical. How can one possibly review de novo a bail amount that is set based upon a judge's discretion?

**{¶ 84}** In endorsing de novo review, the majority cites our recent decision in *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 5, and claims that a court of appeals may "independently weigh the evidence to make its own bail determination." Majority opinion at ¶ 16. *Mohamed*, however, was an ill-advised departure from this court's longstanding precedent.

**{¶ 85}** Up until *Mohamed* was decided, the weight of Ohio authority was that an abuse-of-discretion standard applied. *See, e.g.*, *Ahmad v. Plummer*, 126 Ohio St.3d 262, 2010-Ohio-3757, 933 N.E.2d 256, ¶ 17 ("the court of appeals did not abuse its discretion in determining that the $3,000,000 bail was not excessive"); *Coleman v. McGettrick*, 2 Ohio St.2d 177, 180, 207 N.E.2d 552 (1965) ("we cannot find any abuse of discretion in the action of the courts denying bail"); *Colavecchio v. McGettrick*, 2 Ohio St.2d 291, 292, 208 N.E.2d 741, (1965) (we "will not interfere with the exercise of [the trial court's] discretion unless there appears to have been a gross abuse thereof"); *Hardy v. McFaul*, 103 Ohio St.3d 408, 2004-Ohio-5467, 816 N.E.2d 248, ¶ 7, 11 (upholding court of appeals' decision that applied abuse-of-discretion standard to excessive-bail claim); *In re Green*, 101 Ohio App.3d 726, 730, 656 N.E.2d 705 (8th Dist.1995) ("In a habeas corpus action to contest the reasonableness of bond, this court must determine whether the trial court abused its discretion"); *In re Scherer*, 7th Dist. Mahoning No. 01 C.A. 167, 2001-Ohio-3420 (applying abuse-of-discretion standard to excessive-bail claim); *King v. Telb*, 6th Dist. Lucas No. L-05-1022, 2005-Ohio-800, ¶ 20 ("In a habeas corpus action which challenges the amount of bond, we must review the decision of the trial court under an abuse of discretion standard"); *see also Hartman v. Schilling*, 160 Ohio St.3d 1486, 2020-Ohio-5506, 158 N.E.3d 617, ¶ 4-5 (Kennedy, J., dissenting) (explaining that the court's decision to dismiss the habeas petition for failure to state a claim without first holding a hearing was impossible to square with the court's statement in *Mohamed* that it would apply de novo review to excessive-bail claims).

**{¶ 86}** In *Mohamed*, at least, this court referred the matter to a master commissioner to take evidence before determining that the bail set by the trial court was excessive. *Mohamed* at ¶ 1. Indeed, the court in *Mohamed* premised its holding that de novo review applied on the fact that "in an original action, an appellate court may permit a habeas petitioner to introduce evidence to prove his claim and then exercise its own discretion in imposing an appropriate bail amount." *Id.* at ¶ 5. But in the case at bar, there was no hearing held and no new evidence submitted. The appellate court simply reviewed the transcripts from the trial court and substituted its judgment for the trial court's. Thus, whatever justification for de novo review existed in *Mohamed* does not exist here.

**{¶ 87}** To make matters worse, the majority requires not only that courts of appeals review de novo trial courts' bail decisions but also that this court review de novo the decisions of the courts of appeals and the trial courts. So that means that every person who has bail set is entitled to three independent looks at his bail terms. That's hardly a model for judicial efficiency.

**{¶ 88}** The bigger problem, though, is that trial judges on the whole will almost certainly make better bail decisions than appellate judges. Our Constitution and Crim.R. 46 entrust bail decisions to trial judges for a reason. The typical trial judge has extensive experience in setting the conditions of release, making such decisions on a regular, often daily, basis. "With experience in fulfilling that role comes expertise." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Moreover, "[t]he trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). By applying deferential review, we ensure that the trial-court proceedings are the "main event," not just a "tryout on the road." *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

{¶ 89} In addition, trial courts are far better equipped than appellate courts to actively monitor a defendant's compliance with the terms of bail. They are closer to the action and can more easily and more quickly modify the conditions of release based on changed circumstances. Abuse-of-discretion review, in short, not only comports with our Constitution and rules, but also makes good sense.

{¶ 90} Our Constitution places bail decisions in the hands of trial judges, and Crim.R. 46(B) makes clear that bail decisions are entrusted to the trial judge's discretion. We ought to honor these commands and allow reversal of a trial court's bail decision only when the judge has abused the discretion she has been given.

### B. The majority gives victims short shrift

{¶ 91} With the passage of Marsy's Law in 2017, Ohio voters elevated the rights of victims to constitutional status. And in the early stages of this case, Marsy's Law worked as it was intended. The trial court and the prosecutor realized that they had neglected to afford the victims the opportunity to be heard in the bail process. A new proceeding was convened, and after hearing the concerns and the fears of the deceased's family, the trial court decided to retain the original bail amount.

{¶ 92} But then came the review of that decision. The court of appeals determined that it would consider the matter de novo. Marsy's Law guarantees a victim the right "to reasonable and timely notice of all public proceedings involving the criminal offense or delinquent act against the victim, and to be present at all such proceedings." Article I, Section 10a(A)(2), Ohio Constitution. It also gives the victim the right "to be heard in any public proceeding involving release" of the defendant. *Id.* at Section 10a(A)(3).

{¶ 93} If a reviewing court is going to consider a matter anew, without any deference to what happened in the trial court, then it also needs to allow the victims to exercise the same rights they have in the trial court. There is no indication that that happened here. There is nothing in the appellate court record to indicate that

the victims were given any opportunity to be present and have their voices heard. And certainly, this court hasn't provided any such opportunity to the victims. Indeed, the majority brushes aside the family's fears based on nothing more than its reading of a paper record. Majority opinion at ¶ 31.

{¶ 94} We can't have it both ways. If we are going to say that a reviewing court must ignore the credence that a trial court put in a victim's statements, then we have to insist that the victim be given an opportunity to be heard in the reviewing court. To do otherwise would deprive victims of the rights they are guaranteed under our Constitution.

### C. The majority improperly prohibits courts from considering the safety of the public

{¶ 95} The majority today holds that a court may not even consider the "potential threat posed by a defendant" to the safety of the community in setting a bail amount. Majority opinion at ¶ 19, 24. This is a dangerous holding that flies in the face of the plain language of Crim.R. 46(B) and our precedent.

{¶ 96} Crim.R. 46(B) provides:

> [T]he court shall release the defendant on the least restrictive conditions that, in the discretion of the court, will reasonably assure the defendant's appearance in court, *the protection or safety of any person or the community*, and that the defendant will not obstruct the criminal justice process. If the court orders financial conditions of release, those financial conditions shall be related to the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant.

(Emphasis added.) By its very terms then, Crim.R. 46(B) mandates that the court consider "the protection or safety of any person or the community" in setting bail

terms. The majority tries to get around this inconvenient fact by pointing out that public safety is not explicitly listed in the sentence that relates to financial conditions. Because of this, it reasons, "public safety is not a consideration with respect to the financial conditions of bail" and financial conditions must only relate to the risk of flight. (Emphasis deleted.) Majority opinion at ¶ 24. The problem with this reading is that included within the financial-conditions sentence is not only the risk of nonappearance but also "the seriousness of the offense, and the previous criminal record of the defendant." Crim.R. 46(B). The seriousness of the offense and a defendant's prior record relate directly to public safety considerations. Indeed, if the rule's drafters meant for only "the defendant's risk of non-appearance" to be considered, they would have stopped right after those words; there would have been no need to include anything else in the sentence.

{¶ 97} Furthermore, Crim.R. 46(C) explicitly lists factors to be considered "in determining the types, *amounts* and conditions of bail." (Emphasis added.) The first factor to be considered is "[t]he nature and circumstances of the crime charged, and specifically whether the defendant used or had access to a weapon." Crim.R. 46(C)(1). Plainly, whether someone used or has access to a weapon relates directly to public safety.

{¶ 98} The majority's position is also undercut by the public process that led to this court's adoption of the amendment. When the proposed changes to Crim.R. 46 were first put out for public comment, in October 2019, the proposed rule provided that "financial conditions shall be related *solely* to the defendant's risk of non-appearance." (Emphasis added.) *See* Proposed Amendments to the Ohio Rules of Practice and Procedure (Oct. 7, 2019), available at https://www.supremecourt.ohio.gov/ruleamendments/documents/ONLINE%20P ACKET.pdf (accessed Dec. 23, 2021) [https://perma.cc/ZQT7-84D9]. The final version adopted by this court after the public-comment process, however, does not include the word "solely." Thus, in contrast to the majority's position today, it is

evident that the rule amendment was not intended to forbid consideration of public safety in setting a bail amount.

{¶ 99} Indeed, the Staff Notes to the July, 1, 2020 amendments to Crim.R. 46 make clear that public safety remains a proper consideration in setting bail.  The Staff Notes provide: "Crim. R. 46 has been amended to improve efficiency in setting bail *in an amount* that effectively ensures (1) the defendant's continued presence at future proceedings, (2) that future proceedings will not be impeded by any effort to obstruct justice, and (3) *the safety of any person as well as the community in general*."  (Emphasis added.)

{¶ 100} The primary purpose of bail is to ensure the appearance of the defendant.  *Bland v. Holden*, 21 Ohio St.2d 238, 239, 257 N.E.2d 397 (1970).  But up until today, it has been understood that a judge could consider the threat a defendant poses to the public in setting a reasonable bail.  *See, e.g.*, *Chari v. Vore*, 91 Ohio St.3d 323, 328, 744 N.E.2d 763 (2001) (in habeas case, upholding trial court's bail decision and noting that the trial court could appropriately consider "the nature and circumstances" of the felonies charged as well as the fact that the defendant "allegedly committed some of the offenses when he was previously on bail"); *Allen v. Altiere*, 11th Dist. Trumbull No. 2015-T-0065, 2015-Ohio-3556, ¶ 19 ("Overall, the primary purposes of bail are to ensure the appearance of the defendant at trial and to provide for public safety"); *Garcia v. Wasylshyn*, 6th Dist. Wood No. WD-07-041, 2007-Ohio-3951, ¶ 4; *Lazzerini v. Maier*, 2018-Ohio-1788, 111 N.E.3d 727, ¶ 2-6 (5th Dist.).

{¶ 101} In disregarding all considerations other than the need to ensure the appearance of the accused in court, the majority relies on *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951).  Majority opinion at ¶ 12, 15.  However, the United States Supreme Court has since made clear that *Stack* does not stand for the broad proposition for which it is cited by the majority.  In *United States v. Salerno*, the court explained that "[n]othing in the text of the [excessive-bail clause of the

Eighth Amendment to the federal Constitution] limits permissible Government considerations solely to questions of flight. The only arguable substantive limitation * * * is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." 481 U.S. 739, 754, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Thus, contrary to what the majority suggests, nothing in the federal Constitution precludes a trial court from considering public safety when setting the amount of bail. And certainly nothing in the text of the Ohio Constitution imposes such a prohibition. Article I, Section 9 of the Ohio Constitution.

{¶ 102} By prohibiting trial judges from even considering public safety in determining the amount of bail, the majority acts contrary to the plain terms of Crim.R. 46. And by tying the hands of trial judges who must make difficult bail decisions, the majority's action today will almost certainly make our communities less safe.

### III. The trial court did not abuse its discretion

{¶ 103} This case is properly reviewed under an abuse-of-discretion standard. Here, DuBose was charged with the most serious of crimes, murder, aggravated robbery and aggravated burglary. It has long been understood that "if an accused is charged with crimes the conviction for which would result in long incarceration, with little hope of early release or probation, the incentive to abscond is greater and the amount [of bail] must be such as to discourage the accused from absconding." *Bland* at 239. The trial court also had before it substantial evidence that DuBose was a flight risk. He fled the jurisdiction after the crime, and when he was apprehended, he provided false identification to the arresting officer. He also had with him $2,000 in cash and a number of credit cards that were not in his name. Under these circumstances, I cannot say that the trial court abused its discretion in setting the bail that it did.

## IV. Conclusion

{¶ 104} I dissent because I do not believe that the trial court abused its discretion in setting Justin DuBose's bail at $1.5 million. I also dissent because I worry about the consequences of the majority's decision today. In refusing to apply any deference to bail decisions made by trial judges, in refusing to ensure that victims' rights are protected, and in prohibiting a court from even considering public safety in making bail decisions, the majority departs from our rules, our precedent, and our Constitution. And in doing so, it undermines the safety of our communities.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Alex Scott Havlin, Assistant Prosecuting Attorney, for appellant.

_____