[Cite as *Dubose v. McGuffey*, 2021-Ohio-3815.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JUSTIN DUBOSE, | : | CASE NO. C-210489 |
| Petitioner, | : | |
| vs. | : | *O P I N I O N.* |
| CHARMAINE MCGUFFEY, HAMILTON COUNTY SHERIFF, | : | |
| Respondent. | : | |

Original Action in Habeas Corpus

Judgment of Court: Petition for Writ Granted

Date of Judgment Entry on Appeal:  October 27, 2021

*Arenstein and Gallagher, William R. Gallagher* and *Kara C. Blackney*, for Petitioner,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Respondent.

**CROUSE, Judge.**

{¶1}    Petitioner Justin Dubose is currently being detained in the Hamilton County Justice Center because he contends he is unable to post the $1.5 million bail that has been set in his case. Dubose and codefendant Jamie Shelton were charged with the murder of Shawn Green. The murder is alleged to have occurred on July 18, 2020, during a robbery. Dubose has been indicted for two counts of murder, one count of aggravated robbery, and one count of aggravated burglary in the case numbered B-2005815B. He has filed a petition for a writ of habeas corpus challenging the amount of his pretrial bail as excessive. The court, upon consideration thereof, finds that the petition is well taken and is granted.

**The Bail Hearings Below**

{¶2}    Complaints were filed and warrants were issued against Dubose on October 2, 2020, for murder and aggravated robbery. He was arrested in Las Vegas, Nevada. He waived extradition and was returned to Hamilton County on November 5, 2020, and appeared before the Hamilton County Municipal Court for a bail hearing.  At the hearing, the state requested that the court impose a $1.5 million secured bail because a different judge had already set such a bail for his co-defendant, Shelton. In support of the high bail, the state claimed that Dubose and Shelton shot the victim in the head after they entered the garage of a home in order to rob the homeowner of his marijuana. They subsequently fled the scene and Dubose was arrested in Las Vegas.

{¶3}    In support of a lower bail, Dubose's attorney represented that he had been retained by Dubose's mother, Dubose is not employed, and he does not have

the financial means to afford a high bail. He further explained that Dubose is 25 years old and does not have a significant criminal history.

{¶4} After hearing argument, the municipal court judge set a $750,000 secured bail on the murder charge and an additional $750,000 secured bail on the aggravated-robbery charge, totaling $1.5 million.

{¶5} After he was indicted, Dubose filed a motion to reduce bail before the common pleas court judge assigned to the case, arguing that the $1.5 million bail was excessive and the municipal court judge did not consider Dubose's ability to afford the bail. In the motion, Dubose asserted that he is a graduate of Colerain High School, a lifelong resident of Cincinnati, and his entire family lives in Cincinnati. He claimed he had been working full-time for the same company for over a year. He further claimed he had no felony convictions, no history of weapons, and no history of failing to attend court appearances. He claimed that he and his family did not have the financial means to post the current bail. The motion was set for a hearing on February 23, 2021.

{¶6} At the hearing, Dubose's counsel argued that Dubose has strong family ties to the community, no failures to appear, no felony convictions, does not own a passport, and cannot afford the $1.5 million bail.

{¶7} In response, the state countered that this was a planned aggravated robbery inside of a residence by Dubose and Shelton. The state alleged that Dubose was the "hands-on killer" who shot and killed the victim, who was left for dead when Dubose and Shelton fled the scene. Dubose and Shelton were later arrested in Las Vegas. The state argued that Dubose posed a danger to the community and was an

"extremely violent person" and a flight risk. The state asked the judge to keep the bail as is.

{¶8} The trial court stated that it must consider several factors, including ties to the community, ability to pay, the serious nature of the offense and the risk of flight. The court found that although this was a very serious case and Dubose was "a significant risk of flight," he was innocent until proven guilty and the $1.5 million bail was excessive. The court reduced the bail to $500,000 straight with an electronic monitoring unit ("EMU").

{¶9} After the court entered its order reducing the bail, it was informed by the prosecution that there was a failure to comply with Marsy's Law, in that the victim's family had not been notified of the bail hearing. The court immediately reinstated the original $1.5 million bail and set the matter for a hearing on February 23, 2021, with the victim's family present.

{¶10} At the hearing, the victim's grandmother informed the court that she is terrified of Dubose and feels that she and her family would be in extreme danger if he were released, even on electronic monitoring. The court kept the bail at $1.5 million.

{¶11} Dubose filed a second motion to reduce bail, which was heard on August 12, 2021. After hearing argument, the court denied the motion. The court stated that it would give Dubose the benefit of the doubt that he did not travel to Las Vegas to avoid prosecution. However, the court noted the seriousness of the charges, that they included gun specifications and carried mandatory prison time. The court stated that it placed a lot of weight on the fear of the family members.

{¶12} In this habeas petition, Dubose argues that the $1.5 million bail ordered by the common pleas court judge is excessive and unreasonable, and the

judge did not properly consider his financial resources as required by Crim.R. 46(C) and the Ohio Supreme Court. Dubose requests that this court reduce his bail to $500,000 with EMU, which was the bail originally set by the common pleas court.

### The Standard of Review

{¶13} "[I]n an original action, an appellate court may permit a habeas petitioner to introduce evidence to prove his claim and then exercise its own discretion in imposing an appropriate bail amount." *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, ¶ 5.

{¶14} Thus, *Mohamed* suggests that our standard of review is de novo.[1] *See Hartman v. Schilling*, 160 Ohio St.3d 1486, 2020-Ohio-5506, 158 N.E.3d 617, ¶ 2 (Kennedy, J. dissenting) (stating that the court applied a de novo standard of review in *Mohamed*); *see also Stevens v. Navarre*, 2021-Ohio-551, 168 N.E.3d 578, ¶ 8 (6th Dist.) ("[W]e glean from *Mohamed* that we must conduct a de novo review in our determination of whether the pretrial bail is excessive.").

{¶15} Our record consists of the verified habeas petition, the exhibits attached thereto, and the response of the respondent. Neither party requested an opportunity to submit additional evidence.

### The $1.5 million Bail is Excessive

{¶16} While the nature and circumstances of the crime charged are certainly relevant to any bail determination, Crim.R. 46(C) also requires the court to "consider many other factors that are specific to the accused, such as the weight of the evidence and the defendant's financial resources." *Mohamed* at ¶ 7. "Any financial conditions [of release] shall be in an amount and type which are least costly to the defendant

---

[1] As a result, this de novo standard supplants the prior "hybrid" standard of review that this court historically applied. *Drew v. State ex. rel. Neil,* 2020-Ohio-4366, 158 N.E.3d 684, ¶ 3 (1st Dist.).

while also sufficient to reasonably assure the defendant's future appearance in court." Crim.R. 46(B). Imposing an unreasonably high bail that everyone knows the defendant cannot afford is tantamount to a denial of bail, but it is done in a manner that avoids compliance with the due-process requirements for the statutory denial of bail.

{¶17} We must remember that "[t]he sole purpose of bail is to ensure a person's attendance in court." *State ex rel. Sylvester v. Neal*, 140 Ohio St.3d 47, 2014-Ohio-2926, 14 N.E.3d 1024, ¶ 16; R.C. 2937.22 (A) ("Bail is security for the appearance of an accused to appear and answer to a specific criminal or quasi-criminal charge in any court or before any magistrate at a specific time or at any time to which a case may be continued, and not depart without leave."). "Bail is excessive when it is higher than is reasonably necessary to serve the government's interest in ensuring the accused's appearance at trial." *Mohamed*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, at ¶ 29 (Kennedy, J., dissenting), citing *United States v. Salerno*, 481 U.S. 739, 753-755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), and *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

{¶18} "[S]etting a high bail in order to keep someone accused of a crime incarcerated pretrial is both statutorily and constitutionally unlawful." *Mohamed* at ¶ 24 (Stewart, J., concurring), citing R.C. 2937.222, *State v. Bevacqua*, 147 Ohio St. 20, 22, 67 N.E.2d 786 (1946), and *Stack* at 4. "Boiled down to its essence, setting high bail amounts accomplishes with money what courts could not otherwise achieve without following the due-process requirements in R.C. 2937.222." *Id.*

{¶19} That is exactly what occurred here. Dubose's counsel repeatedly proffered that neither Dubose nor his family can afford the $1.5 million bail, a point

reiterated in the verified habeas filing before us. The state has never contested this point or introduced contrary evidence, and, indeed, the thrust of its arguments at the bail hearings is that the bail must be so high that Dubose cannot get out.

{¶20} The state made this point in various ways. At the February 23, 2021, bail hearing, the prosecutor told the court, "So not only for the safety of the community, but I don't think he would come back if he got out. I would ask the court to keep the bond as it was [$1.5 million]." A few days later, the state reiterated, "And I know the Court set a bond and also put on an EMD provision on that bond: but the feeling is that that's just an ankle bracelet and you can either cut that off or violate it, and it doesn't really protect somebody if the person wants to violate it. Certainly there'd be notice to probation or EMD that there's a violation, but in that time period after he goes off his range, then that person could do whatever they want." And at the final bail hearing, the prosecutor warned, "if the defendant were released, [the victim's family] would feel they were in danger from Mr. Dubose."

{¶21} The state's point is not that the court should set a bail at a level to "ensure a person's attendance in court." *Neal*, 140 Ohio St.3d 47, 2014-Ohio-2926, 14 N.E.3d 1024, at ¶ 16. Rather, it is that the bail must be sufficiently high that Dubose can never get out.

{¶22} At the end of the day, this is an argument for the denial of bail. But it is unconstitutional to achieve a de facto denial of bail without satisfying the rules for a true denial of bail. *See Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 64 ("Thus, the amendment to Section 9, Article I was designed to expand the types of offenses and circumstances under which bail could be denied, not to limit an accused's access to a surety once bail is granted."). (Emphasis omitted.)

All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

Ohio Constitution, Article I, Section 9.

{¶23} If the state believes that Dubose represents such a danger to the community that he must be held without bail, then it must make a motion pursuant to R.C. 2937.222, at which point "the judge shall hold a hearing to determine whether an accused person charged with aggravated murder when it is not a capital offense, murder, a felony of the first or second degree, a violation of section 2903.06 of the Revised Code, a violation of section 2903.211 of the Revised Code that is a felony, or a felony OVI offense shall be denied bail." R.C. 2937.222(A).

{¶24} The statute places the burden on the state to prove "that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person and the community." *Id.* That provision further provides:

No accused person shall be denied bail pursuant to this section unless the judge finds by clear and convincing evidence that the proof is evident or the presumption great that the accused committed the offense described in division (A) of this section with which the accused is charged, finds by clear and convincing evidence that the accused poses a substantial risk of serious physical harm to any person or to the community, and finds by clear and convincing evidence that no release conditions will reasonably assure the safety of that person and the community.

R.C. 2937.222(B).

**{¶25}** In other words, this statute exists to address the exact concerns raised by the state below and in response to Dubose's habeas petition. The court's decision in *Mohamed v. Eckelberry*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, the Ohio Constitution, Crim. R. 46, and R.C. 2937.222 all reinforce the point that if the state elects not to pursue that statutory path, the focus of the monetary bail amount must be on assuring the defendant's appearance and not simply artificially inflating the amount so that no one can satisfy it.[2]

**{¶26}** In this case, Dubose's high bail was effectively a denial of bail, without the trial judge making any of the required statutory findings. This is improper. Underscoring the point, despite the fact that the trial court found Dubose to be a

---

[2] While we acknowledge that Crim.R. 46(B) also requires the court to consider "the protection or safety of any person or the community" when determining an appropriate bail, the rule lists numerous nonfinancial conditions that can be imposed to address this factor. These conditions include, but are not limited to, restrictions on travel, association, or place of abode, regulation of the person's contact with witnesses or others associated with the case, completion of drug and/or alcohol assessment and compliance with treatment regulations, and "[a]ny other constitutional condition considered reasonably necessary to reasonably assure appearance or public safety." The rule states that financial conditions of release "shall be related to the defendant's risk of non-appearance, the seriousness of the offense, and the previous criminal record of the defendant" and must be in "an amount and type which are least costly to the defendant while also sufficient to reasonably assure the defendant's future appearance in court."

flight risk, it originally found the $1.5 million bail to be excessive. It lowered the bail to $500,000, but, in order to ensure his appearance in court and for the safety of the community, also required an EMU. If the state wishes to have Dubose detained without bail because it believes he poses a substantial risk of serious physical harm to any person or to the community and no release conditions will reasonably assure the safety of that person and the community, then it must comply with R.C. 2937.222.

{¶27}   After reviewing the record presented to this court, we find that the $1.5 million bail is excessive because it does not take into consideration Dubose's financial resources as required by Crim.R. 46(C)(4). Dubose represented below and reiterated in the verified filing before us that he does not have the resources to post such a high bail, and the state has not presented any argument or evidence to the contrary. By requesting in his habeas petition that this court lower his bail to $500,000 straight with EMU, Dubose is effectively agreeing that this bail amount is attainable yet high enough to compel him to appear in court when required. The additional condition of EMU also addresses concerns regarding the safety of the victim's family and the community.

{¶28}   We finally would like to note that the trial judge below engaged in thoughtful consideration of the bail in this case, convening no less than three separate bail hearings. Determining a bail that satisfies all of the requirements of Crim.R. 46 is not an easy decision to make. But, as explained above, it is unlawful to set a bail so high that it "accomplishes with money what courts could not otherwise achieve without following the due-process requirements in R.C. 2937.222." *Mohamed*, 162 Ohio St.3d 583, 2020-Ohio-4585, 166 N.E.3d 1132, at ¶ 25 (Stewart, J., concurring).

{**¶29**} Accordingly, Dubose's petition for a writ of habeas corpus is hereby granted and his bail in the case numbered B-2005815B is reduced to $500,000 straight, no ten percent, with the additional conditions of 24-hour lockdown EMU, no direct or indirect contact with the victim's family and petitioner shall surrender his passport if he owns one. All other non-financial conditions of release imposed by the court of common pleas shall also remain in place.

Petition for writ granted.

**BERGERON, P.J.,** concurs,
**WINKLER, J.,** dissents**.**

Please note:
 The court has recorded its own entry on the date of the release of this opinion.