[Cite as *Cowherd v. McGuffey*, 2025-Ohio-387.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| JOHNNY COWHERD, | : | CASE NO. | C-240642 |
| Petitioner, | : | | |
| vs. | : | *O P I N I O N* | |
| | : | | |
| CHARMAINE MCGUFFEY, | | | |
| HAMILTON COUNTY SHERIFF, | : | | |
| Respondent. | : | | |

Original Action in Habeas Corpus

Judgment of the Court: Writ Granted

Date of Judgment Entry on Appeal: February 7, 2025

*Moermond & Mulligan* and *Brandon A. Moermond*, for Petitioner,

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Respondent.

CROUSE, Judge.

{¶1}   In this original action, petitioner Johnny Cowherd has filed a petition for a writ of habeas corpus alleging that he is being held on an excessive pretrial bail in the amount of $1,000,000 by respondent Hamilton County Sheriff Charmaine McGuffey. For the reasons set forth in this opinion, we agree and grant Cowherd's petition.

## I.    *Factual Background*

{¶2}   Cowherd allegedly engaged in "controlled buys" of narcotics with a confidential informant on May 16, 2023, and May 20, 2023. As a result of the controlled buys, a warrant was obtained to search two properties connected to Cowherd. The warrant was executed on June 10, 2023, and drugs were recovered.

{¶3}   On June 18, 2024, an indictment was issued in the case numbered B-2402751 charging Cowherd with six drug-trafficking offenses related to the controlled buys. The charged offenses were third-, fourth-, and fifth-degree felonies. Police held off on filing charges related to the drugs recovered during the execution of the search warrant because Cowherd agreed to cooperate and work with law enforcement.

{¶4}   In their filings before this court, both petitioner and respondent state that Cowherd's bail was set at $10,000 in the case numbered B-2402751.[1] He posted the bail and was released. Cowherd ultimately failed to cooperate with law enforcement while out on bail, and on August 12, 2024, a 13-count indictment was issued against Cowherd in the case numbered B-2403670 charging him with offenses related to items recovered during the execution of the search warrant. He was charged

---

[1] We note that the transcript from the hearing on Cowherd's motion to modify his bail that was attached to Cowherd's petition for a writ of habeas corpus contains statements from Cowherd's counsel that his bail in the case numbered B-2402751 was set at $100,000. It is unclear whether the transcript contains a typographical error or if the trial court was misinformed as to the actual amount of the bail set in the case numbered B-2402751.

with six counts of drug trafficking, six counts of possession, and one count of having a weapon while under disability. These charges included four first-degree-felony offenses. Cowherd entered pleas of not guilty, and his bail was set at $1,000,000 straight. The court also imposed an electronic-monitoring requirement.

{¶5} Cowherd filed a motion to modify his bail, arguing that it was excessive and tantamount to the denial of bail. The trial court held a hearing on Cowherd's motion. The State argued that a high bail was necessary because of safety concerns related to Cowherd's behavior while released on bail in the case numbered B-2402751. The trial court asked the State if Cowherd had threatened informants. The State initially told the court that it could not "put that on the record," and it referenced an off-the-record conversation between the parties and the court on this issue. The State, however, later said on the record that Cowherd, despite initially agreeing to cooperate with law enforcement, subsequently decided not to cooperate and "started threatening other individuals regarding his case." The State further told the court that "[t]he officer told me today, prior to being arrested at least, there were daily threats to individuals in public. There are safety concerns regarding that individual's safety."

{¶6} Counsel for Cowherd argued that the alleged offenses charged in the indictment in the case numbered B-2403670 concerning the drugs found during the execution of the search warrant were known to all parties at the time that bail was set in the case numbered B-2402751. Counsel denied the allegations that Cowherd had threatened witnesses, argued that Cowherd had family ties to the area and was employed, and stressed to the court that the underlying charges were not violent offenses. A letter from Cowherd's employer was submitted to the court.

{¶7} Citing public-safety concerns, the trial court overruled Cowherd's motion to modify bail.

**{¶8}** Cowherd filed his petition for a writ of habeas corpus in this court, arguing that his bail is excessive and was imposed to unconstitutionally imprison him prior to trial. He argues, as he did in the hearing on his motion to modify bail, (1) that the conduct that is the subject of the charges in the case numbered B-2403670 had already occurred at the time that the indictment was issued in the case numbered B-2402751, and that a much lower bail was previously deemed appropriate even with knowledge of this conduct, (2) that while serious, the charges for which the million dollar bail was set are not violent and are not the equivalent of murder, (3) that Cowherd has strong ties to the community, where his family and friends reside, (4) that Cowherd has been employed at Aunty's Homemade Food since 2021, and (5) that Cowherd has zero failures to appear in the last five years. Cowherd asks that this court order him bailed upon a $100,000 bond, to be secured by a ten-percent deposit.

**{¶9}** Along with his petition, Cowherd filed an affidavit stating that he is unable to post the $1,000,000 bail that is currently in place.

**{¶10}** The State argues in its response to Cowherd's petition that an examination of the factors in R.C. 2937.011 supports the bail imposed in this case. It contends that Cowherd is a major drug offender charged with trafficking and possessing felony-one level amounts of fentanyl and cocaine, and that despite his previous felony drug convictions, he was alleged to be in possession of a weapon while under disability for those prior convictions. The State argues that even though the charges against Cowherd are nonviolent, he still poses a significant risk to public safety. It stresses the strength of the evidence against Cowherd, and it further highlights that Cowherd offered no evidence of his financial situation to support his assertion that he is unable to post bail.

**{¶11}** The State further argues that the charges in the case numbered B-

2403670 include multiple first-degree felonies and are much more severe than the charges in the case numbered B-2402751, necessitating a significantly higher bail. It also argues that Cowherd is a flight risk, given the nature of the charges against him. And it contends that Cowherd poses public-safety concerns because he threatened witnesses while out on bail, stating that "[i]f the prior bond was inadequate to ensure the risk to public safety, it follows that increasing the bond is warranted."

{¶12} After receiving Cowherd's petition and the State's response, we issued an order setting a deadline for the parties' submission of evidence and written argument. The State elected not to file any additional evidence, but Cowherd submitted a copy of a bank statement documenting the amount of money in his personal checking account, a document reflecting the amount of equity he has in his home, a letter from his employer at Aunty's Homemade Food, and a letter from the Director of Training at Direct Venture CDL training school stating that Cowherd has been involved in their reentry program for two years and has seven clients under his control. Cowherd additionally submitted a statement from M.J., the witness that he allegedly threatened while out on bail in the case numbered B-2402751, declaring that he had never been threatened by Cowherd.

{¶13} The State submitted an additional written argument confirming that M.J. was the witness referenced in the State's briefing, maintaining that Cowherd failed to demonstrate that he was entitled to extraordinary relief, and requesting that, should this court deem Cowherd's bail excessive, we impose electronic monitoring (or some other form of judicial monitoring) as a condition of bail.

## II. Standard of Review

{¶14} Cowherd seeks relief from an allegedly excessive bail. As the majority of the Ohio Supreme Court recently set forth in *DuBose v. McGuffey*, 2022-Ohio-8, ¶ 15,

"Whether a particular bail determination is unconstitutionally excessive is a question of law appropriate for de novo review."

{¶15} Notably, three out of four justices in the *DuBose* majority are no longer on the Court. Two justices who dissented are still on the Court and advocated for the application of an abuse-of-discretion standard of review under all circumstances. Justices Kennedy and DeWine relied on Crim.R. 46 to conclude that the abuse-of-discretion standard was appropriate. *Id.* at ¶ 40, 45 (Kennedy, J., dissenting), and ¶ 82 (DeWine, J., dissenting).

{¶16} Justice Fischer also dissented and advocated for an abuse-of-discretion standard of review in situations where the "appellate court merely reviews the same evidence presented to the trial court during the bail hearings." *Id.* at ¶ 59 (Fischer, J., dissenting). Justice Fischer agreed that de novo is the appropriate standard of review when new evidence has been submitted to the appellate court. *Id.* at ¶ 63.

{¶17} Crim.R. 46 was repealed after the *DuBose* decision, and the imposition of bail is now governed by R.C. 2937.011. *Alliman v. Sigsworth*, 2023-Ohio-4236, ¶ 4 (6th Dist.). R.C. 2937.011 contains language similar to former Crim.R. 46 allowing the trial court to impose an amount of bail in its discretion.

{¶18} Despite our concern that the *DuBose* de novo standard may be in jeopardy, we nevertheless must follow *DuBose* and conduct a de novo review to determine whether the bail imposed by the trial court was excessive. *See DuBose*, 2022-Ohio-8, at ¶ 15. But it is worth noting that, for the reasons set forth below, we would reach the same result even under the more discretionary standard—the bail imposed by the trial court was excessive under the circumstances of this case.

### III.    Bail and R.C. 2937.011

{¶19} "Bail is security for the appearance of an accused to appear and answer

to a specific criminal or quasi-criminal charge." R.C. 2937.22(A). The Ohio Constitution, Article 1, Section 9 addresses the imposition of bail. It provides that:

> All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted. When determining the amount of bail, the court shall consider public safety, including the seriousness of the offense, and a person's criminal record, the likelihood a person will return to court, and any other factor the general assembly may prescribe.
>
> The General Assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community.

Ohio Const., art. I, § 9. The Ohio Constitution plainly provides that, except where an offender is charged with a capital offense or "a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community," a nonexcessive bail shall be imposed. *Id.* The Constitution directed the General Assembly to "fix by law standards" applicable to determine whether an offender falls within the group of offenders that may be held

without bail. *Id.*

**{¶20}** The General Assembly followed that directive by enacting R.C. 2937.222. This statute provides that, upon motion by the State or the court's own motion, the trial court "shall hold a hearing to determine whether an accused person charged with aggravated murder when it is not a capital offense, murder, [or] a felony of the first or second degree . . . shall be denied bail." R.C. 2937.222(A).

**{¶21}** At the hearing to determine whether bail shall be denied, the accused has the right to counsel, to testify, to present witnesses and additional information, and to cross-examine any of the State's testifying witnesses. *Id.* While the rules of evidence do not apply to a denial-of-bail hearing, the State bears the burden of proving (1) "that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged," (2) "that the accused poses a substantial risk of serious physical harm to any person or to the community," and (3) "that no release conditions will reasonably assure the safety of that person and the community." *Id.* Before bail may be denied, the trial court must find that the State proved all three of these requirements by clear and convincing evidence. R.C. 2937.222(B).

**{¶22}** For accused persons who do not fall within the confines of R.C. 2937.222 or for whom detention without bail is not sought, the imposition of bail for an offender during pretrial release is governed by R.C. 2937.011. This statute provides:

> Unless the court orders the defendant detained pursuant to section 2937.222 of the Revised Code or other applicable law, the court *shall release the defendant on the least restrictive conditions* that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the

community, and that the defendant will not obstruct the criminal justice process. If the court orders financial conditions of release, those financial conditions shall be related to public safety, the defendant's risk of nonappearance in court, the seriousness of the offense, and the previous criminal record of the defendant.

(Emphasis added.) R.C. 2937.011(A). The bail imposed "shall be in an amount and type that are least costly to the defendant while also sufficient to reasonably assure the defendant's future appearance in court." R.C. 2937.011(B).

**{¶23}** The allowance of the trial court to consider public safety when setting bail is a new development in Ohio law. In *DuBose*, the Court held that "public safety *is not* a consideration with respect to the *financial* conditions of bail." (First emphasis added.) *DuBose*, 2022-Ohio-8, at ¶ 24. In response to the Court's ruling, the citizens of Ohio amended Article 1, Section 9 of the Ohio Constitution to specifically allow for the consideration of public safety when imposing bail. The Ohio Supreme Court, in light of this amendment, repealed Crim.R. 46, which formerly governed pretrial release. *Alliman*, 2023-Ohio-4236, at ¶ 4 (6th Dist.); *see* Ohio Supreme Court, *Amendments to the Ohio Rules of Practice and Procedure*, 8 (July 1, 2023).[2] In place of the criminal rule, the General Assembly enacted R.C. 2937.011, which expressly provides that financial conditions of release shall be related to public safety, along with the defendant's risk of nonappearance in court, the seriousness of the offense, and the previous criminal record of the defendant. R.C. 2937.011(A).

**{¶24}** How does the newly-required consideration of public safety impact a court's determination of an appropriate amount of bail, especially when the Ohio

---

[2] Available at https://www.supremecourt.ohio.gov/ruleamendments/documents/July%201%20 2023%20Effective%20Rules%20with%20Summary.pdf.

Constitution still prohibits the court from imposing an excessive bail? A trial court cannot justifiably rely on public-safety concerns to impose a bail that is so high it results in preventive detention. *See* Karnow, *Setting Bail for Public Safety*, 13 Berkely J.Crim.L. 1, 5 (2008)[3] (describing preventive detention as the imposition of "high bail to prevent defendants from being released"). Allowing a trial court to do so would circumvent the statutory bail requirements.

{¶25} The purpose of bail is to ensure a defendant's appearance in court. R.C. 2937.22(A). In Ohio, bail can only be forfeited for failing to appear, not for incurring new charges while released on bail. R.C. 2937.35 ("Upon the failure of the accused or witness to appear in accordance with its terms the bail may in open court be adjudged forfeit . . . ."); *State v. Clagg*, 2019-Ohio-4527, ¶ 16 (4th Dist.) (R.C. 2937.35 limits "a court's authority to forfeit bond to only those defendants who fail to appear in court").

{¶26} If bail cannot be forfeited due to an offender's commission of a crime while released on bail, we question what impact increasing bail on public-safety grounds has on an offender's motivation to commit or not commit additional crimes. Various scholars who have analyzed this issue posit that it has very little impact. Karnow recognized this problem, stating "[o]ne central flaw in this framework, however, is that defendants do not forfeit bail when they commit a new offense; they forfeit bail only when they do not appear at a hearing. Consequently, the in terrorem effect of bail is significantly diminished since there is no direct link between committing a new offense and forfeiting bail." Karnow, 13 Berkely J.Crim.L. at 20.

{¶27} This disconnect was also discussed in Howe, *The Implications of Incorporating the Eighth Amendment Prohibition on Excessive Bail*, 43 Hofstra

---

[3] Available at https://lawcat.berkeley.edu/record/1121607.

L.Rev. 1039 (2015).4 This law review article recognized that "[t]he idea that the amount of bail imposed will influence a released defendant regarding behaviors other than his reappearance is irrational unless he will forfeit all or part of the bail for those behaviors" because "[i]f the defendant will only forfeit bail when he does not appear, only bail designed to keep him incarcerated would seem to prevent him from engaging in other bad behaviors." *Id.* at 1050.

{¶28} Using California as an example, Howe discussed the inherent problems with a system that allows public safety to be considered when bail is imposed but only allows bail to be revoked for failure to appear. Howe explained:

> Many state statutes also call for the consideration of public safety in setting bail amounts, and some of these directives may also at times infringe the incorporated bail clause. The California scheme is a troubling example. Under both the California Constitution and California legislation, judicial officers considering bail amounts, in cases where bail is authorized, must make "public safety" and the "safety of the victim" the "primary considerations." At the same time, California law provides that bail forfeiture occurs only for failure to appear. As a result, in many cases, the only way to use bail to assure the public safety is by imposing a bail amount calculated to be unaffordable, which is like denying bail. This would not be a problem in cases where no Eighth Amendment right to bail exists. However, in many of the California cases, the charges are not, as in [*United States v.] Salerno,* [481 U.S. 739 (1987),] for "the most serious of crimes," and, in most of them, the

---

4 Available at https://scholarlycommons.law.hofstra.edu/hlr/vol43/iss4/4.

bail hearings do not involve all of the procedural protections for the defendant that were present in *Salerno*. Absent these substantive and procedural pre-conditions, the defendant is not properly divested of his constitutional rights to bail and to non-excessiveness. In these circumstances, to deny him bail or deliberately impose unaffordable bail, even to assure public safety, should infringe the Eighth Amendment.

(Footnotes omitted.) *Id*. at 1061.[5]

**{¶29}** Guidance on finding a balance between imposing an appropriate bail and public safety can be found in *United States v. Salerno*, 481 U.S. 739 (1987). In that case, the Court considered, and upheld, the constitutionality of a provision of the Bail Reform Act of 1984, 18 U.S.C. 3141-3150, that allowed an arrestee to be detained pending trial if the State demonstrated by clear and convincing evidence after an adversary hearing that the safety of any person or the community could not be assured by any condition of release. *Id*. at 741. In rejecting a due-process challenge to the Bail Reform Act, the Court stated:

> Under the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination. Detainees have

---

[5] While our research has not revealed a case from the California Supreme Court discussing the interplay between the Eighth Amendment, bail, and public safety, the Court has discussed the state's bail system under a due-process lens in *In re Humphrey*, 11 Cal.5th 135 (2021). In *Humphrey*, the Court affirmed that before an individual may be detained without bail because the individual poses a threat to public safety, both the individual's risk of harm and the fact that no other conditions of release could reasonably protect the safety of the public or the victim must be established by clear and convincing evidence. *Id*. at 153. It further held that, in situations where a court determines that a money bail is "reasonably necessary," a court must "consider the individual arrestee's ability to pay, along with the seriousness of the charged offense and the arrestee's criminal record, and—unless there is a valid basis for detention—set bail at a level the arrestee can reasonably afford." *Id*. at 154.

a right to counsel at the detention hearing. 18 U.S.C. § 3142(f). They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. *Ibid*. The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g). The Government must prove its case by clear and convincing evidence. § 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.

*Id*. at 751-752. *Salerno* upheld preventive detention in situations where a defendant is accorded procedural safeguards and where the government proves the necessity of refusing bail by clear and convincing evidence. The Court referenced intimidation of witnesses as an example of a situation in which the refusal of bail may be justified. *Id*. at 753.

**{¶30}** The procedures approved in *Salerno* are akin to those set forth in R.C. 2937.222. Because Cowherd was charged with multiple felonies of the first and second degree, the State could have sought to hold him without bail in this case pursuant to R.C. 2937.222, but it did not. Accordingly, Cowherd was entitled to a reasonable, nonexcessive bail. *See* R.C. 2937.011(A); Ohio Const., art. I, § 9; *DuBose*, 2022-Ohio-8, at ¶ 12 ("Both the United States Constitution and the Ohio Constitution prohibit excessive bail."). And while the trial court could appropriately consider public safety

13

when imposing bail, the trial court could not rely on public-safety concerns to circumvent the requirement that it not impose an excessive bail. R.C. 2937.011(A) (where an accused is not detained without bail under R.C. 2937.222, the accused shall be released "on the least restrictive conditions" that the court determines will "reasonably assure" the accused's appearance, the safety and protection of a person or the community, and that the criminal justice process will not be obstructed by the accused).

**{¶31}** With these considerations in mind, we evaluate whether the bail imposed by the trial court was excessive.

### IV. Analysis of the $1,000,000 Bail

**{¶32}** R.C. 2937.011(E) sets forth factors to be considered when determining the amount, type, and conditions of bail to impose. These factors guide our review of the imposed bail, and they include:

(1) The nature and circumstances of the crime charged, and specifically whether the defendant used or had access to a weapon;

(2) The weight of the evidence against the defendant;

(3) The confirmation of the defendant's identity;

(4) The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;

(5) Whether the defendant is on probation, a community control sanction, parole, post-release control, bail, or under a court protection order;

(6) The considerations required under Ohio Constitution, Article

14

I, Section 9.

R.C. 2937.011(E).

**{¶33}** Cowherd was charged with 12 drug offenses, specifically six trafficking offenses and six possession offenses. He was also charged with having a weapon while under disability. The charges related to the evidence obtained during the execution of the search warrant after Cowherd had engaged in controlled buys, and included four first-degree felony offenses. *See* R.C. 2937.011(E)(1). Cowherd does not argue that the State's evidence is weak or lacking, and he has made no argument with respect to the weight of the evidence against him. *See* R.C. 2937.011(E)(2). Nor has he raised any challenge to his identity or argued mistaken identity. *See* R.C. 2937.011(E)(3).

**{¶34}** With respect to the factor set forth in R.C. 2937.011(E)(4), Cowherd contends that he has strong ties to the community and that his wife and children reside in Cincinnati. In support of this assertion, he provided a document reflecting the amount of equity he has in his home. Cowherd has been employed at Aunty's Homemade Food since 2021, and he submitted a letter from his employer verifying his employment and vouching for his character. Cowherd further argues that he is financially unable to post a $1,000,000 bond and has submitted a statement from his personal checking account demonstrating its balance.

**{¶35}** Although Cowherd was released on bail in the case numbered B-2402751 at the time that the indictment in the case numbered B-2403670 was filed, the offenses contained in that indictment were alleged to have been committed prior to the filing of the earlier indictment in the case numbered B-2402751. The State had delayed filing the charges in the case numbered B-2403670 because it believed that Cowherd would cooperate with law enforcement. *See* R.C. 2937.011(E)(5). The record contains no evidence of misconduct by Cowherd while released on bail.

**{¶36}** Last, pursuant to R.C. 2937.011(E)(6), we must examine the considerations set forth in the Ohio Constitution, Article I, Section 9. These considerations comprise "public safety, including the seriousness of the offense, and a person's criminal record, the likelihood a person will return to court, and any other factor the general assembly may prescribe." Ohio Const., art. I, § 9. While the State argued at the hearing on Cowherd's motion to modify bond that Cowherd posed a risk to public safety and had threatened witnesses while released on bail in the case numbered B-2402751, Cowherd submitted a statement in support of his petition for a writ of habeas corpus from the witness that he had allegedly threatened. This witness, M.J., stated that he had never been threatened by Cowherd. The State acknowledged that M.J. was the witness referenced at the hearing on the motion to modify and supplied no additional information that any other witnesses had been threatened.

**{¶37}** In addition to these factors, we note that the record contains no evidence that Cowherd has previously failed to appear or that he has tried to leave the jurisdiction.

**{¶38}** Following our review of the record and the relevant statutory considerations, we hold that the $1,000,000 bail imposed by the trial court is excessive. The trial court justified its denial of Cowherd's motion to modify bail by citing public-safety concerns. But the record contains no actual evidence that Cowherd threatened a witness, nor that he posed any greater risk to public safety than when he was bailed in the earlier case, B-2402751. In fact, the evidence submitted by Cowherd in this original action, which the State does not contest, refutes the State's assertion that Cowherd threatened witnesses.

**{¶39}** The $1,000,000 bail imposed by the trial court, which Cowherd has established he cannot afford, was tantamount to the denial of bail and was imposed to

keep Cowherd incarcerated prior to trial. As we have recognized, "setting a high bail in order to keep someone accused of a crime incarcerated pretrial is both statutorily and constitutionally unlawful." (Cleaned up.) *DuBose v. McGuffey*, 2021-Ohio-3815, ¶ 18 (1st Dist.). As noted, the State could have sought to hold Cowherd without bail pursuant to R.C. 2937.222. The imposition of a $1,000,000 bail achieved the same result that compliance with R.C. 2937.222 would have, but without according Cowherd any of the procedural protections mandated by the statute.

**{¶40}** We accordingly hold that, where the record contains no evidence that Cowherd posed any additional risk to public safety, where Cowherd was employed at the same company since 2021 and has ties to the community, and where the trial court ignored Cowherd's financial resources and ability to pay, the bail imposed by the trial court was excessive. Cowherd's petition for a writ of habeas corpus is hereby granted and his bail in the case numbered B-2403670 is reduced to $100,000, secured by a ten-percent deposit. We additionally impose as part of Cowherd's bail two conditions: that he is prohibited from having any contact, direct or indirect, with M.J., and that he is prohibited from possessing a firearm or having a firearm present in his home. We appreciate the State's request that we include electronic monitoring as a condition of bail, but we decline to do so at this time in the absence of any evidence that Cowherd poses a flight risk or is, for example, threatening witnesses.

Writ granted.

**BOCK, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.